34 F.3d 1071
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mohamed Sharif BARAASI, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70764.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1994.*
Decided Aug. 26, 1994.
 
 Before: BROWNING, KOZINSKI, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The core of the opinion of the Board of Immigration Appeals (the Board) is as follows:
 
 
 3
 The heart of this respondent's claim is that he participated in training in Sudan for the raid against Qadhafi's headquarters in 1984 and that his involvement is known to Libya authorities because some of those who participated in the raid and were captured could have disclosed his participation in anti-Qadhafi activities. There is no proof that this is the case. Even assuming the truth of the respondent's testimony, his fear is based on conjecture (Tr. at 29-30, 48). This is not necessarily fatal to an asylum claim as an asylum applicant need only establish that his fears are well-founded and refugees "rarely are able to offer direct corroboration of specific threats." Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir.1984); see also Matter of Dass, Interim Decision 3122 (BIA 1989). In such cases, however, it is particularly important that a respondent's testimony be credible, persuasive, and specific. Here, however, the respondent demonstrated his willingness to testify falsely at the hearing by doing so. Moreover, we have serious reservations regarding his narration of events in Sudan. He went to Sudan to be trained to fight. He was waiting to be sent to Libya and wanted to fight the Qadhafi regime. Yet in the midst of this period, he applied for a non-immigrant visa to enter the United States supposedly to visit. Then, after the May 1984 raid, even though he had no fear of remaining in Sudan and had gone to that country to be trained to fight against Qadhafi and supposedly wished to do so, he left Sudan, came to the United States, and immediately enrolled in school. Considering our reservations regarding the plausibility of this account and the fact that the respondent demonstrated his willingness to testify falsely at the hearing, we are not satisfied that his testimony regarding his activities in Sudan is credible and persuasive.
 
 
 4
 The opinion is inconsistent internally and with the evidence before the Board. First, the opinion states: "There is no proof that this is the case." The "this" in this statement is disclosure of Baraasi's activities by persons captured by Qadhafi. But Baraasi testified that one of the persons captured, Nabid, knew Baraasi; that Baraasi heard Nabid after his capture speaking on Libyan radio about the training camp in the Sudan where Baraasi had been; and that it was inferable that Nabid under torture gave Qadhafi's men the names of his companions at the camp. This testimony was specific. If, as the Board acknowledged, refugees are "rarely able to offer direct corroboration of specific threats," the testimony was sufficient to establish a well-founded fear of torture, imprisonment, or death if Baraasi returned to Libya. The Board assumed the truth of Baraasi's testimony, but discounted it as "conjecture." But one who testifies to the interrogation of a comrade-in-arms held by torturers is engaging in more than conjecture; he is stating what gives rise to probable fear.
 
 
 5
 The Board, however, shifted its focus midway in its paragraph on "the heart" of Baraasi's case and declared itself not satisfied that his testimony as to it was "credible and persuasive." To reach this result, the Board combined its findings of Baraasi's lack of truthfulness on certain peripheral issues and its doubts as to "the plausibility" of his account. It appears that the combination was necessary for the Board to reach its conclusion. Although the inferences were debatable, evidence does support the Board's conclusion as to the peripheral matters, but no evidence supports the Board's conclusion of implausibility. No conflict exists between training to fight and deciding not to go ahead with a dangerous project. Especially is that true here where a May 1984 expedition against Qadhafi had ended in disaster and death for the participants. The Board's credibility judgments must have a basis in fact that is absent here.
 
 
 6
 The Board did not even consider the testimony of the two witnesses who supported Baraasi's claims. We cannot sustain a decision of an administrative agency that does not consider all the evidence in the record. See Mattis v. United States I.N.S., 774 F.2d 965, 968-69 (9th Cir.1985). In fact, both of the witnesses, whose credibility was unimpeached, testified to facts and circumstances that gave strong support to Baraasi's fear of persecution. Darrat, who is familiar with both Libya and the petitioner, testified that Baraasi had a good chance of being hanged in the street. Mohammed confirmed Baraasi's inference that a dissenter who was captured in an attack on Qadhafi would be tortured and give up the names of his collaborators.
 
 
 7
 We are persuaded that the BIA did not weigh all the evidence relevant to Baraasi's application for asylum. Accordingly, the petition is GRANTED, the decision of the Board is REVERSED, and the case is REMANDED to the Board for a fuller consideration of Baraasi's application for asylum.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3